NS:RTP/MSM
F.# 2017R00999

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER (570) 914-4912 THAT IS STORED AT PREMISES CONTROLLED BY T-MOBILE | **TO BE FILED UNDER SEAL**<br><br>**SEARCH WARRANT APPLICATION FOR HISTORICAL CELL-SITE INFORMATION**<br><br>Case No. 18-MC-2442 |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Gregory C. Kies, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain cellular telephone assigned call number (570) 914-4912 ("the SUBJECT PHONE") that is stored at premises controlled by T-Mobile a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require T-Mobile to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2.      I have been a Special Agent with the Federal Bureau of Investigation ("FBI") for sixteen years and am currently assigned to the Brooklyn/Queens Resident Agency, where I am responsible for conducting and assisting in investigations into the activities of individuals and criminal groups responsible for narcotics trafficking, gang activity and violent crimes, including robberies.  These investigations are conducted both in an undercover and overt capacity.  I have participated in investigations involving search warrants and arrest warrants.  As a result of my training and experience, I am familiar with the techniques and methods of operation used by individuals involved in criminal activity to conceal their activities from detection by law enforcement authorities.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement officers and agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Section 1951(a) (Hobbs Act robbery and Hobbs Act robbery conspiracy), Title 18, United States Code, Section 924 (possessing and brandishing a firearm during a crime of violence) and Title 18, United States Code, 1962(d) (racketeering conspiracy) have been committed by TYSHEEN COOPER and others.  There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, or fruits of these crimes as further described in Attachment B.

2

## PROBABLE CAUSE

The May 24, 2017 Armed Robbery

5.      On or about May 24, 2017 at approximately 2:40 a.m., two men, later

identified as TYSHEEN COOPER, also known as "Billz," and SHAROD LIBURD, also

known as "Pop," approached an individual ("John Doe") in Queens, New York, who

operates a business that sources supplies from outside the United States.  COOPER and

LIBURD brandished firearms and demanded money and property from John Doe.  John Doe

then threw approximately $1,000 in cash, a portion of which represented the proceeds of his

business, along with two gold necklaces onto the ground.  COOPER and LIBURD picked up

the money and necklaces, got into a white Nissan (the "Nissan") and fled.

6.      John Doe got into his car, drove after the Nissan, and called 911.  John Doe

followed the Nissan from the vicinity of the location in Queens, New York to the vicinity of

Kingsland Avenue and Meeker Avenue in Brooklyn, New York, where officers from the

New York City Police Department stopped the Nissan and arrested the occupants.  At the

time of the arrest, COOPER was located in the rear passenger seat.  LIBURD was located in

the front passenger seat.  A woman later identified as GABRIALE HERBERT was located in

the driver's seat.

7.      Following the arrests, law enforcement officers recovered a Smith & Wesson

black .380 caliber semiautomatic firearm from underneath the front passenger seat of the car.

At the time of the arrest, law enforcement officers also recovered a black .38 caliber revolver

with a defaced serial number, the necklaces stolen from John Doe, and a large quantity of

cash.  At the time of the arrests, law enforcement officers also recovered cell phones,

3

including a white model SM-G550T1 (i.e., the SUBJECT PHONE). A phone belonging to GABRIALE HERBERT (the "Herbert Phone") was also recovered.

8.     On January 11, 2018, the Honorable Ramon E. Reyes, United States Magistrate Judge in the Eastern District of New York, issued a warrant to search, among other things, the SUBJECT PHONE. A subsequent search of the SUBJECT PHONE revealed that the telephone number of the SUBJECT PHONE was (570) 914-4912.

9.     Records from T-Mobile for the SUBJECT PHONE show that in May 2017, it was subscribed to by "Charlie Brown," at 379 S. Main Street, Wilkes Barre, Pennsylvania.[1]

10.     In the Herbert Phone, telephone number (718) 419-1859 (the "Sharod Liburd Phone Number") is listed as "Babe" in the Herbert Phone's contacts. The investigation has revealed that, at the time of the May 24, 2017 Hobbs Act robbery, GABRIALE HERBERT and SHAROD LIBURD were involved in a romantic relationship. In the SUBJECT PHONE, the Sharod Liburd Phone Number is listed as "Pop Eazy." The investigation has revealed that "Pop" is a nickname used by SHAROD LIBURD. A search of the SUBJECT PHONE further revealed that the SUBJECT PHONE and the Sharod Liburd Phone Number were in contact between February 9, 2017 and May 24, 2017, including on the day of the May 24, 2017 robbery.

---

[1] Records from T-Mobile for telephone number (929) 370-5893 demonstrate that telephone number (929) 370-5893 was subscribed to by TYSHEEN COOPER from December 2, 2016 until January 24, 2017. The records also show that on January 24, 2017, the subscriber name for telephone number (929) 370-5893 was changed from TYSHEEN COOPER to "Charlie Brown," the same subscriber name associated with the SUBJECT PHONE, with a listed address of 379 S. Main Street, Wilkes Barre, Pennsylvania, the same address associated with the SUBJECT PHONE.

11.     For instance, days before the robbery, on May 16, 2017, the Sharod Liburd

Phone Number sent the following text message to the SUBJECT PHONE: "Shit koolin i

need a lixk bro."  Based upon my training, experience and investigation in this case, I believe

that LIBURD was informing COOPER that he was low on money ("Shit koolin") and that he

wanted to commit a robbery ("i need a lixk bro").  I believe that "lick" is a slang term for

robbery.  I believe that LIBURD used an "x" instead of a "c" in the word "lick" to signify his

affiliation with the Bloods street gang.  Based on my training, experience and investigation in

this case, I believe that Bloods gang members change the letter "c" to another letter when

writing to demonstrate their rivalry with Crips.

The Indictments

12.     On June 1, 2017, a grand jury in the Eastern District of New York returned an

indictment (the "Original Indictment") charging COOPER, SHAROD LIBURD and

GABRIALE HERBERT with Hobbs Act robbery and Hobbs Act robbery conspiracy, each in

violation of 18 U.S.C. § 1951(a), and possessing and brandishing a firearm during a crime of

violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).  See 17 CR 296 (ILG).

13.     On November 9, 2017, a grand jury in the Eastern District of New York

returned a twelve-count superseding indictment in case number 17 CR 296 (the "Superseding

Indictment").  In addition to charging COOPER, SHAROD LIBURD and HERBERT with

the crimes contained in the Original Indictment, the Superseding Indictment charged

COOPER, MICHAEL LIBURD, also known as "Mike Mike" and "Mitty," and MAURICE

WASHINGTON, also known as "Moe" and "Flaco," with, among other offenses,

racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), and conspiracy to commit

murder-in-aid-of-racketeering and murder-in-aid-of-racketeering, in violation of 18 U.S.C. § 1959(a).  See 17 CR 296 (S-1) (PKC).  The murder-in-aid-of racketeering charge stems from the January 17, 2016 murder of Antwon Flowers.  The Superseding Indictment alleges that COOPER, SHAROD LIBURD, MICHAEL LIBURD and WASHINGTON, along with others, are members of the West End Enterprise, a gang composed of individuals residing in and around the Sea Rise Apartments, the Gravesend Houses and Surfside Gardens, also known as the "Mermaid Houses," apartment complexes located in the western end of the Coney Island neighborhood of Brooklyn, New York.

14.     Based on my training and experience, I know that individuals involved in joint criminal activity and individuals who are members and associates of street gangs often communicate with one another and with victims of their crimes via, among other things, cellular telephone, sometimes using multiple cellular telephones to do so.  The investigation in this case has revealed that several members and associates of the West End Enterprise have used numerous cellular telephones in furtherance of their criminal activities.

15.     In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public.  I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records."  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are

6

often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in

rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve

every call made to or from that device.  Accordingly, cell-site data provides an approximate

location of the cellular telephone but is typically less precise than other types of location

information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

16.     Based on my training and experience, I know that T-Mobile can collect cell-

site data about the SUBJECT PHONE.  I also know that wireless providers such as T-Mobile

typically collect and retain cell-site data pertaining to cellular phones to which they provide

service in their normal course of business in order to use this information for various

business-related purposes.  A preservation request was sent to T-Mobile requesting

preservation of the requested information.

17.     Based on my training and experience, I know that wireless providers such as

T-Mobile typically collect and retain information about their subscribers in their normal

course of business.  This information can include basic personal information about the

subscriber, such as name and address, and the method(s) of payment (such as credit card

account number) provided by the subscriber to pay for wireless telephone service.  I also

know that wireless providers such as T-Mobile typically collect and retain information about

their subscribers' use of the wireless service, such as records about calls or other

communications sent or received by a particular phone and other transactional records, in

their normal course of business.  In my training and experience, this information may

constitute evidence of the crimes under investigation because the information can be used to

identify the SUBJECT PHONE's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

18.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

19.     I further request that the Court direct T-Mobile to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.  Because the warrant will be served on T-Mobile, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Gregory C. Kies
Special Agent
FBI

Subscribed and sworn to before me on _____, 2018

s/Steven M. Gold
HONORABLE STEVEN M. GOLD
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

8

## ATTACHMENT A

### Property to Be Searched

This warrant applies to records and information associated with the cellular telephone assigned call number (570) 914-4912 ("the Account"), that are stored at premises controlled by T-Mobile ("the Provider"), headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054.

## ATTACHMENT B

### Particular Things to be Seized

**I.     Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A for the time period between May 1, 2017 and May 24, 2017:

   a.   The following information about the customers or subscribers of the Account:

   i.   Names (including subscriber names, user names, and screen names);

   ii.   Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii.   Local and long distance telephone connection records;

   iv.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v.   Length of service (including start date) and types of service utilized;

   vi.   Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

2

       vii.   Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

     viii.   Means and source of payment for such service (including any credit card or bank account number) and billing records.

  b.  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account, including:

       i.   the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

      ii.   information regarding the cell towers and sectors through which the communications were sent and received.

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of Title 18, United States Code, Section 1951(a) (Hobbs Act robbery and Hobbs Act robbery conspiracy) and Title 18, United States Code, Section 924 (possessing and brandishing a firearm during a crime of violence) involving TYSHEEN COOPER and others during the period between May 1, 2017 and May 24, 2017.